PEOPLE v DANIELS

Docket No. 93919. Submitted February 10, 1987, at Lansing. Decided March 5, 1987.

A Farmington Hills police officer investigating a complaint of a speeding vehicle knocking over mailboxes observed a car properly parked on a street but not adjacent to any particular address. The car was occupied, and when the officer, Gilbert Kohls, stopped behind the car and got out of his vehicle, the driver of the parked car, defendant Daniels, got out of his car and approached Kohls. Kohls asked for Daniels' license and registration, and Daniels began explaining why he was there. A second officer arrived at the scene and, while the second officer remained with Daniels, Kohls walked to Daniels' car. Kohls observed white powder and what could be drug paraphernalia on the dashboard and front seat of Daniels' car. Daniels was arrested and charged with possession of cocaine. The Oakland Circuit Court, Francis X. O'Brien, J., granted defendant's motion to suppress the evidence and dismissed the charges, finding that Officer Kohls lacked a justifiable suspicion of criminal activity by defendant and thus the seizure of the evidence was the product of an unlawful stop. The people appealed.

The Court of Appeals held:

1. A police approach for questioning on the street amounts to a consensual encounter unless there exist intimidating circumstances leading the person to reasonably believe he is not free to leave or the person rebuffs the police officer by refusing to answer and walking away. There is nothing in this case that would warrant a reasonable belief that defendant was not free to ignore Officer Kohls' questions and walk away before Officer Kohls walked over to defendant's car and observed the white powder and suspected drug paraphernalia. Therefore, the con-

REFERENCES

Am Jur 2d, Searches and Seizures §§ 23, 25, 85, 88.

Validity of seizure under Fourth Amendment "plain view" doctrine — Supreme Court cases. 75 L Ed 2d 1018.

Observation through binoculars as constituting unreasonable search. 48 ALR3d 1178.

See also the annotations in the Index to Annotations under Plain View Doctrine.

traband evidence was not tainted by an unlawful stop of defendant.

2. The vantage point from which Officer Kohls observed the cocaine was not within a constitutionally protected area. Therefore, there was no search in the Fourth Amendment sense and Kohls was justified by the exigent circumstances in seizing the cocaine.

Reversed and remanded.

1. CRIMINAL LAW — CONSENSUAL ENCOUNTERS — FOURTH AMENDMENT.

A police approach for questioning on the street amounts to a consensual encounter unless there exist intimidating circumstances leading the person to reasonably believe he is not free to leave or the person rebuffs the police officer by refusing to answer and walking away; consensual encounters do not violate the Fourth Amendment.

2. SEARCHES AND SEIZURES — PLAIN VIEW.

An individual who exposes an object to plain view has no reasonable expectation of privacy in that object, and where such expectancy is lacking, the observation of the object does not constitute a search within the meaning of the Fourth Amendment, regardless of whether the observation is made by a police officer or a private citizen.

3. SEARCHES AND SEIZURES — ARTIFICIAL ILLUMINATION.

It is of no relevance that artificial illumination is used to enable an officer to view during the night that which could have been plainly seen during the day.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Darryl P. Mitchell,* for defendant on appeal.

Before: HOOD, P.J., and MACKENZIE and R. M. PAJTAS,* JJ.

PER CURIAM. Defendant was charged with pos-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

session of cocaine, MCL 333.7214(a)(iv); MSA 14.15(7214)(a)(iv) and MCL 333.7403(1) and (2)(a)(iv); MSA 14.15(7403)(1) and (2)(a)(iv). Following his bindover, the circuit court granted defendant's motion to suppress evidence and dismissed the charges. The prosecutor appeals. We reverse and remand.

Farmington Hills police officer Gilbert Kohls testified that at approximately 9:40 P.M. on October 30, 1985, he was dispatched to the area of Alycekay and Twelve Mile Road to investigate a complaint of a speeding vehicle knocking over mailboxes. On Alycekay, Kohls observed a car properly parked north of Woodhue Apartments, but not adjacent to any particular address. When he noticed that the car was occupied, Kohls stopped behind the car and got out of his vehicle. As he approached the car, the driver, defendant, got out and walked toward Kohls. Kohls asked defendant for his driver's license and registration, but instead defendant produced an Oakland County Sheriff's Deputy identification card and badge. Defendant said that he was lost and had pulled over to ascertain his location and to smoke a cigarette. At that time, Officer Herrick arrived, also responding to the reckless driving complaint. As Officer Herrick remained with defendant, Officer Kohls walked to defendant's car. Through the windshield he saw on the dashboard a mirror with white powder and some razor blades and a duffel bag containing a water pipe, screens, a vial with more white powder, and more razor blades on the front seat. Kohls testified that in his 12½ years of experience as a police officer, a mirror and razor blade are often used to line cocaine. Defendant was then placed under arrest.

In granting defendant's motion to suppress the contraband evidence, the trial court ruled that

Officer Kohls lacked a justifiable suspicion of criminal activity by defendant and thus the seizure of the evidence was the product of an unlawful stop, presumably under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). A court's ruling on a motion to suppress evidence will not be set aside unless clearly erroneous. A ruling is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. *People v Alfafara,* 140 Mich App 551, 556; 364 NW2d 743 (1985). In this case, we believe that such a mistake has been made. In our opinion, the proper issue before the court was a more fundamental one than whether Kohls' suspicions justified a *Terry* stop, i.e., did Kohls' transaction with defendant amount to a *Terry* stop?

As noted in *Terry, supra,* 392 US at 19, n 16, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." This is because "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry, supra,* 392 US at 34 (White, J., concurring). See also *People v Shabaz,* 424 Mich 42; 378 NW2d 451 (1985). We believe this record presents such a "consensual encounter," *Immigration & Naturalization Service v Delgado,* 466 US 210, 215; 104 S Ct 1758; 80 L Ed 2d 247 (1984), as opposed to a *Terry* stop.

In *Florida v Royer,* 460 US 491, 497; 103 S Ct 1319; 75 L Ed 2d 229 (1983), quoted in *Shabaz, supra,* pp 56-57, Justice White wrote in a plurality opinion:

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the per-

son is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. . . . Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." [Citations omitted.]

On the other hand, in an earlier plurality opinion, *United States v Mendenhall,* 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980), the Supreme Court gave the following examples "of circumstances that might indicate a seizure, even where the person did not attempt to leave":

[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Following *Royer* and *Mendenhall,* the *Delgado, supra,* Court stated:

Although we have yet to rule directly on whether mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment . . . [it] is apparent . . . that police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. . . . Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment. [466 US 216. Citations omitted.]

The Court has made clear, moreover, that police may also ask a person to do something, such as produce identification or an airline ticket, see *Royer* and *Mendenhall,* without necessarily converting the encounter into a *Terry* stop. Thus, it appears that for *Terry* purposes a police approach for questioning on the street amounts to a consensual encounter, not a *Terry* stop, unless there exist intimidating circumstances leading the person to reasonably believe he was not free to leave or the person rebuffs the police officer by refusing to answer and walking away. It is in the latter situations that justification for a *Terry* stop must be present before the police may detain the person.

In the instant case, defendant's approach toward Officer Kohls, followed by Kohls' request for identification and defendant's "voluntary answers," *Royer, supra,* 460 US at 497, met the test for a preseizure, "consensual encounter." There are no indications of intimidating circumstances such as those listed in *Mendenhall.* According to Kohls' testimony, defendant was free to go to his car and drive off, although that "would make me more suspicious." Kohls alone approached defendant and there is no evidence that he touched him or drew a gun. Kohls' request for defendant's identification was apparently nonintimidating. In short, there appears to be nothing that would have warranted defendant's reasonable belief that he was not free to ignore the questions and walk away. Accordingly, the contraband evidence was not tainted by an unlawful stop of defendant.

An individual who exposes an object to plain view has no reasonable expectation of privacy in that object. *Katz v United States,* 389 US 347, 361; 88 S Ct 507; 19 L Ed 2d 576 (1967) (Harlan, J., concurring). Where such expectancy is lacking, the

observation of the object does not constitute a search within the meaning of the Fourth Amendment, regardless of whether the observation is made by a police officer or a private citizen. *Texas v Brown,* 460 US 730, 740; 103 S Ct 1535; 75 L Ed 2d 502 (1983). Thus,

> [t]here is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled Maples to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment. [460 US 740.]

It is of no relevance that artificial illumination is used to enable an officer to view during the night that which could have been plainly seen during the day. *Brown, supra,* 460 US 739-740.

In the instant case, then, the vantage point from which Officer Kohls observed the cocaine was not within a constitutionally protected area. The observation of contraband openly and patently visible to an inquisitive passerby or a diligent police officer did not implicate the Fourth Amendment. *Brown, supra,* 460 US 740. There was no search in the Fourth Amendment sense. Kohls was justified by the exigent circumstances in seizing the cocaine. See *People v Futrell,* 125 Mich App 568, 572-573; 336 NW2d 834 (1983).

Reversed and remanded.