# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

CHARLES WILLIAM WOOD,

        Defendant-Appellee.

FOR PUBLICATION
September 19, 2017

No. 331462
Oakland Circuit Court
LC No. 2015-255591-FH

Before: STEPHENS, P.J., and K. F. KELLY and MURRAY, JJ.

MURRAY, J., (*concurring in part and dissenting in part*).

    A Michigan State Trooper pulls defendant over for speeding. When the Trooper reaches the vehicle, he sees approximately a dozen "whippet" or nitrous oxide containers in the backseat, along with some empty pill bottles. Knowing that canisters containing nitrous oxide are used for "huffing," which is illegal under state law, the Trooper asked defendant when he last huffed. Defendant answered four days ago. The majority concludes that the Trooper did not, at that point, have probable cause to search the vehicle. But because defendant admitted to having committed a crime, and the otherwise legal containers that were the apparatus to commit the crime were in plain view, under the controlling law, the Trooper had probable cause to arrest defendant without a warrant and search his vehicle. Consequently, for the reasons briefly stated below, the trial court's order should be reversed and the matter remanded for further proceedings.[1]

    Upon de novo review of the circuit court's ruling on the motion to suppress evidence, *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011), it is evident that Trooper Morris had probable cause to search defendant's motor vehicle. More specifically, Trooper Morris had probable cause to believe that defendant had committed a crime under Michigan law and, therefore, could have properly searched the vehicle incident to an arrest. *People v Nguyen*, 305 Mich App 740, 755-756; 854 NW2d 223 (2014). As the United State Supreme Court made clear many decades ago, the test we are to apply in determining whether probable cause to arrest

---

[1] I concur in the majority opinion's determination that this appeal is not moot because the circumstances in the present case are dispositively different than those set forth in *People v Richmond*, 486 Mich 29; 782 NW2d 187 (2010).

-1-

existed is whether the trooper "had reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [defendant] *had committed* or was committing an offense." *Beck v Ohio*, 379 US 89, 91; 85 S Ct 223; 13 L Ed 2d 142 (1964) (emphasis added). The probable cause standard does not require that a trooper conclude that actual criminal activity had or was occurring, but only that there was a probability or substantial chance of criminal activity. *Illinois v Gates*, 462 US 213, 243; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

Here, it is undisputed that Michigan law permits warrantless arrests when the trooper "has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony *has been committed* and reasonable cause to believe the person committed it." MCL 764.15(1)(d) (emphasis added). It is likewise undisputed that "huffing" of chemicals is a 93-day misdemeanor, see MCL 752.273, and so an officer can arrest an individual without a warrant when reasonable cause exists to believe that huffing occurred. The evidence shows that Trooper Morris had probable cause to arrest defendant without a warrant.

At the evidentiary hearing, Trooper Morris testified that defendant had approximately a dozen "whippit," or nitrous oxide canisters, on the floorboard of his vehicle. Trooper Morris also testified that defendant indicated that he had "huffed" approximately four days earlier (thus admitting to the commission of a 93-day misdemeanor)[2] and in further discussions with the trooper, admitted that he realized that huffing could damage his brain. These undisputed facts unquestionably lead to the conclusion that Trooper Morris had probable cause to believe that defendant had committed a crime subject to 93 days' imprisonment within the past four days. That there could be an innocent explanation for possessing the canisters (though that is doubtful given defendant's admission) does not deprive the officer of probable cause to arrest. This point has been repeatedly made by the Supreme Court. In *Gates*, 462 US at 243 n 13, the Court emphasized that:

> The Illinois Supreme Court thought that the verification of details contained in the anonymous letter in this case amounted only to "[t]he corroboration of innocent activity," 85 Ill. 2d 376, 390, 423 N. E. 2d 887, 893 (1981), and that this was insufficient to support a finding of probable cause. We are inclined to agree, however, with the observation of Justice Moran in his dissenting opinion that "[i]n this case, just as in *Draper* [*v United States*, 358 US 307, 314; 79 S Ct 329; 3 L Ed 2d 327 (1959)], *seemingly innocent activity became suspicious in the light of the initial tip." Id.*, at 396, 423 N. E. 2d, at 896. *And it*

_____

[2] That this crime occurred, according to defendant, four days earlier, does not alter the outcome. For one thing, the statute of limitations certainly had not expired. Additionally, in the context of information contained in search warrants, the expiration of well more than four days has been held insufficient to cause the evidence to become stale, see, e.g., *State v Lantz*, 21 Neb App 679, 694-697; 842 NW2d 216 (2014), and so too here, where potential evidence of defendant's recent huffing was sitting in plain view of Trooper Morris. And, as the prosecution points out, when assessing the situation before him, Trooper Morris was not required to accept defendant's version of when the crime occurred. *Criss v Kent*, 867 F2d 259, 263 (CA 6, 1988).

*bears noting that all of the corroborating detail established in Draper was of entirely innocent activity*—a fact later pointed out by the Court in both *Jones v. United States*, 362 U.S., at 269-270, and *Ker v. California*, 374 U.S., at 36.

This is perfectly reasonable. As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, *innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' demands.* We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause. See *Brown v. Texas*, 443 U.S. 47, 52, n. 2 (1979). *In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.* [Emphasis added.]

See also, *United States v Sokolow,* 490 US 1, 9-10; 109 S Ct 1581; 104 L Ed 2d 1 (1989) (analogizing *Gates* and other probable cause cases to the reasonable suspicion standard and recognizing that "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion"); *State v Sisco*, 239 Ariz 532, 536; 373 P3d 549 (2016) (Quoting *Gates* in part and holding that "[p]robable cause, however, does not turn on the 'innocence' or 'guilt' of particular conduct, but instead on the 'degree of suspicion that attaches to particular types of non-criminal acts.' ").

Hence, it is not enough for the majority to assert that the canisters in plain view on the car floor were legal to possess, for *Gates* and other cases teach us whether items are ordinarily "innocent" is not the relevant inquiry. Instead, we must focus on the degree of suspicion attached to those containers. And, Trooper Morris testified that he was well aware of the use of "whippits" for huffing, and that huffing was a crime. Adding to the potential criminal use of the canisters was defendant's candid admission that he had engaged in huffing no more than four days prior. Thus, the combination of factors (even if some could in isolation be considered facially "innocent" or "legal") presented to Trooper Morris created probable cause to arrest defendant without a warrant, and to conduct a search of the vehicle.

That portion of *People v Mead* (*On Remand*), ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 327881), relied upon by the majority, does not alter this outcome. That case dealt, in relevant part, with whether evidence *found in a backpack* located in a car could be justified by a search incident to an arrest. *Mead*, ___ Mich App at ___; slip op at 5-6. Our Court properly concluded that it could not, as the officer had no reason to believe that "the vehicle could contain evidence of an expired license plate," which was the reason that the officer pulled over defendant. *Id*. at ___; slip op at 6. Thus, a search of the backpack could not be supported by an arrest of the defendant for expired plates.

Here, however, Trooper Morris's discovery of the canisters did not result from a search, nor can there be a reasonable argument that it did, as the canisters were in plain view from

Trooper Morris's lawful standpoint. See *Texas v Brown*, 460 US 730, 740; 103 S Ct 1535; 75 L Ed 2d 502 (1983)b and *People v Daniels*, 160 Mich App 614, 620; 408 NW2d 398 (1987). *Mead*'s discussion of what is permissible for a search incident to an arrest would be instructive if the canisters and pill bottles were located in a container within the vehicle, but as these items were in plain view of Trooper Morris, he was free at that point to arrest defendant and search for any additional evidence of a controlled substance violation. See, e.g., *United States v Huff*, 782 F3d 1221, 1226 (CA 10, 2015) ("Upon seeing [in plain view while standing outside the vehicle] the uncased weapon, the officers had the requisite probable cause both to conduct a search of the vehicle and to initiate an arrest based upon this weapons violation."), *State v Hunter*, 62 So3d 340, 344 (La App, 2011) ("Upon making a valid traffic stop, the police officers were lawfully in a position to observe in plain view the clear plastic bag containing cocaine. The evidence of drugs gave the officer probable cause to arrest the defendant and then to search the interior of the vehicle for weapons and evidence as an incident to the lawful arrest. Therefore, the search of the automobile and the seizure of the drugs satisfied the constitutional guidelines for a warrantless search."), and *United States v Sparks*, 291 F3d 683, 690-691 (CA 10, 2002) (collecting cases standing for the proposition that an officer who gains probable cause from viewing an item in a vehicle can then either search the vehicle under the plain view doctrine, or arrest the occupant and search the vehicle).

The majority opines that defendant's "statement could not form the basis for probable cause to search defendant's vehicle" because MCL 752.272 "addresses intoxication and impairment," and Trooper Morris testified that defendant was neither intoxicated nor impaired. But the statute's language says no such thing. Rather, the statute focuses on the person's reason for taking the prohibited action by stating that a person shall not "for the purpose of" causing intoxication, etc, intentionally inhale or otherwise introduce chemical agents into his respiratory or circulatory system. The statute does not require that the person succeed in that purpose, i.e., succeed in getting intoxicated. To the contrary, it simply requires that the person take the prohibited actions for the purpose of achieving the intoxication.

For these reasons, I would reverse the trial court's order granting defendant's motion to suppress and remand for further proceedings.

/s/ Christopher M. Murray